# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAAL L. DUNCAN, | Case No.  1:13-cv-01153-AWI-JLT (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KIM, et al. | **(Doc. 42)** |
| Defendants. | **OBJECTIONS DUE WITHIN 30 DAYS** |

Plaintiff claims that he sought medical assistance from Defendant Nurse Reynoso[1] regarding his dislocated finger on several occasions, but though she was aware of his condition and significant pain, Defendant disregarded and belittled Plaintiff's complaints and refused him medical treatment.  (Doc. 9, p. 3, ¶6.)  Because Defendant establishes that a genuine issue of material fact does not exist and Plaintiff fails to meet his burden to the contrary, the Court recommends the motion for summary judgment be **GRANTED**.[2]

**I.     Procedural History**

In this action, Plaintiff claims Defendant was deliberately indifferent to his serious medical need in violation of the Eighth Amendment.  On July 29, 2015, Defendant filed a motion

---

[1] Though Plaintiff initially named others, Nurse Reynoso is the only remaining defendant in the action.

[2] Because the Court decides this matter on the merits, it need not consider the arguments on qualified immunity or whether Plaintiff exhausted available administrative remedies prior to filing suit.

for summary judgment. (Doc. 42.) Plaintiff opposed this motion[3] and Defendant replied. (Docs. 44, 45.) The motion is deemed submitted. L.R. 230(l).[4]

## II.     Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.,* 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

---

[3] Plaintiff was provided with timely notice of the requirements for opposing a motion for summary judgment by the court in an order filed on August 26, 2015. *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 262 6912 (9th Cir. Jul. 6, 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

[4] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Where a defendant does not bear the burden of proof at trial, he needs only prove an absence of evidence to support Plaintiff's case when seeking summary judgment. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the defendant meets his initial burden, the burden then shifts to the plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires the plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted). It must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). However, the Court may not draw inferences out of thin air; the nonmoving party must produce a factual predicate from which the Court may reasonably draw the inference. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**III.    Legal Standard -- Deliberate Indifference to Serious Medical Needs**

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc))

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994). Plaintiff's sprained finger is accepted as a serious medical need.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

1188 (9th Cir. 2002)).

In medical cases, this requires that Plaintiff show:  (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted).  Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

**A.  Defendant's Motion**

Defendant presents evidence that, at all times in question, she was employed by the CDCR as a Licensed Vocational Nurse and she worked under the direction of a registered nurse and/or physician.  (Doc. 42-2, Undisputed Fact ("UF") Nos. 1, 2.)  In this capacity, she provided a basic level of general nursing care to CDCR inmates. (*Id.*) As an LVN, Defendant was only authorized to provide inmates with medical care that had been ordered by a registered nurse, or a physician.  (*Id.*, UF No. 3.)  Such orders were written on documents entitled, "Physician's Orders."  (*Id.*, UF No. 4.)  Once prepared, the Physician's Orders were given to the LVN to put in the inmate's medical file.  (*Id.*, UF No. 5.)

When an inmate requested medical care from Defendant Reynoso, she was required to abide by certain procedures. (Doc. 42-2, UF No. 6) First, she looked in the inmate's physical medical file (a binder) to determine whether there was an order for the requested treatment. (*Id.*, UF No. 7)  If there was no order for the requested treatment, Defendant Reynoso was not authorized to provide that treatment. (*Id.*, UF No. 8) In this event, she instructed the inmate to fill out a Health Care Services Request Form requesting the sought-after treatment. (*Id.*, UF No. 9). Thereafter a registered nurse or physician would review the inmate's Health Care Services Request Form and make a determination as to the proper course of action. (*Id.,* UF Nos.10, 11).

Defendant Reynoso has no training in treating dislocated fingers, was not authorized to reset dislocated fingers, and did not know how to reset a dislocated finger.  (Doc. 42-2, UF Nos.

12-14.) Defendant Reynoso also did not know of any risk to health as a result of failing to reset a dislocated finger, and did not know of any excessive risk to health as a result of failing to rewrap a finger splint.  (*Id.*, UF Nos. 15, 16.)

Plaintiff injured his finger on June 19, 2010 while playing basketball.  (Doc. 42-2, UF Nos. 17, 18.)  Plaintiff has admitted that Defendant Reynoso was not responsible for dislocating his finger. (*Id.*, UF No. 20.)  Plaintiff attempted to reset his finger and was partially successful, but though his finger looked normal, it started to swell.  (*Id.*, UF Nos. 21-023.)  On June 21, 2010, Plaintiff received a wrapped finger splint from staff at the prison medical clinic. (*Id.*, UF No. 25.)

Plaintiff alleges that Defendant Reynoso was deliberately indifferent to his serious medical needs because she failed to rewrap Plaintiff's finger splint on July 30, 2010, August 10, 2010, and either September 24, 2010 or September 27, 2010.  (*Id.*, UF Nos. 27-29.)

**1.  July 30, 2010**

Defendant presents evidence that on July 30, 2010, Plaintiff went to the medical clinic and requested that Defendant Reynoso rewrap the splint on his finger.  (Doc. 42-2, UF No. 30.)  Either that day or the day before, Plaintiff informed Defendant Reynoso how he injured his finger and that he was under a doctor's care.  (*Id.*, UF Nos. 31, 32.)  Plaintiff has no evidence that, on July 30, 2010, he had an order from a physician or a registered nurse for him to have his splint rewrapped.  (*Id.*, UF No. 33.)  In addition, even if there was such an order, Plaintiff has no evidence that Defendant Reynoso was aware of any such order.  (*Id.*, UF No. 34.)  After Plaintiff requested that Defendant Reynoso rewrap his splint, Defendant Reynoso consulted with other nurses and then looked in a binder.  (*Id.*, UF Nos. 35, 36.)  Plaintiff did not see what was contained in the binder.  (*Id.*, UF No. 37.)

Defendant Reynoso did not rewrap Plaintiff's splint, but told Plaintiff to fill out a Health Care Services Request Form to obtain a new splint wrapping.  (Doc. 42-2, UF Nos. 38, 39.)  Defendant Reynoso was not aware of any excessive risk to Plaintiff's health or safety as a result of failing to rewrap Plaintiff's splint.  (*Id.*, UF No. 16.)  On July 30, 2010, Plaintiff's finger looked straight with a little swelling around the middle knuckle.  (*Id.*, UF No. 41.)  Though Plaintiff

claims that he suffered a serious medical need on July 30, 2010 that required that his dislocated finger be reset, he does not claim that Defendant Reynoso should have reset his finger. (*Id.*, UF Nos. 43, 44.) Between July 31, 2010 and August 9, 2010, Plaintiff had his splint rewrapped at least three times, but he does not know whether any new written orders were prepared for him during that time. (*Id.*, UF Nos. 45, 46.)

### 2. August 10, 2010

Defendant presents evidence that, on August 10, 2010, Plaintiff went to the medical clinic and requested that Defendant Reynoso rewrap his splint. (Doc. 42-2, UF No. 47.) Plaintiff does not remember whether Defendant Reynoso looked in a binder for any orders, though it was Defendant Reynoso's habit to do so whenever an inmate requested medical treatment. (*Id.*, UF Nos. 48, 49.) Further, though Plaintiff does not remember if Defendant Reynoso told him to fill out a Health Care Services Request Form (*Id.*, UF No. 50), it was Defendant Reynoso's habit to do so whenever she was not able to provide an inmate with requested medical treatment (*Id.*, UF No. 51). Plaintiff also does not know whether there were any written orders for his splint to be rewrapped on August 10, 2010 or whether any such orders were in his medical file. (*Id.*, UF Nos. 52, 53.) If there were orders, Plaintiff has no evidence that Defendant Reynoso was aware of them. (*Id.*, UF No. 54.) On August 10, 2010, Defendant Reynoso was not aware of any excessive risk to Plaintiff's health or safety stemming from failing to rewrap his splint. (*Id.*, UF No. 16) His finger looked the same as it did on July 30, 2010 (*id.*, UF No. 55).

Plaintiff claims that the serious medical need he needed addressed on August 10, 2010 was to have his dislocated finger reset. (Doc. 42-2, UF No. 57.) Nevertheless, Plaintiff does not claim that Defendant Reynoso should have reset his finger. (*Id.*, UF No. 44.) Between August 11, 2010 and September 23, 2010, Plaintiff had his splint rewrapped numerous times. (*Id.*, UF No. 58.) In fact, during that period, Defendant Reynoso rewrapped Plaintiffs splint on August 27th, August 31st, September 2nd, September 3rd, September 6th, September 9th, September 13th, September 14th, and September 16th. (*Id.*, UF Nos. 59-67.)

### 3. September 24 or 27, 2010

Plaintiff claims Defendant Reynoso was deliberately indifferent to his serious medical

7

need on either September 24, 2010 or September 27, 2010 because she failed to rewrap his splint on that occasion. (Doc. 42-2, UF No. 29.) Notably, a different nurse rewrapped Plaintiff's splint on September 27, 2010. (*Id.*, UF No. 78.) Moreover, Defendant presents evidence that she did not work on September 24, 2010 because she was on vacation that day. (*Id.*, UF Nos. 69, 70.) In any event, even though Plaintiff alleges he encountered Defendant Reynoso on September 24, 2010, he does not remember if Defendant Reynoso looked in a binder for any orders or told him to fill out a Health Care Services Request Form. (*Id.*, UF No. 71.) On September 24th and September 27th, Defendant Reynoso was not aware of any excessive risk to Plaintiffs health or safety as a result of the failure to rewrap his splint (*id.*, UF No. 16) and his finger looked the same as it did on August 10, 2010. (*Id.*, UF No. 73) Once again, on September 24, 2010, Plaintiff claims that his serious medical need was to have his dislocated finger reset, but he does not claim Defendant Reynoso should have reset it. (*Id.*, UF Nos. 75, 44.) Moreover, though Plaintiff did not get his splint rewrapped on September 24, 2010, medical staff rewrapped it on September 23, 2010, September 25, 2010, September 26, 2010, and, as noted above, on September 27, 2010. (*Id.*, UF Nos. 68, 76-78.)

### 4. Plaintiff Does Not Allege Any Harm

Defendant presents evidence that Plaintiff concedes that neither the splint, nor the wrapping or rewrapping of it, eased his pain. (Doc. 42-2, UF Nos. 79-80.) He does not claim that the failure to receive a new splint wrapping caused him any additional pain. (*Id.*, UF No. 81.) From June 20, 2010 through September 27, 2010, on a scale of 1-10, the pain in Plaintiff's finger was always 4-5. (*Id.*, UF Nos. 24, 26, 42, 56, 74.) He concedes that the splint did not protect him from pain (*id.*, UF No. 82) and he has provided no expert evidence to support his assertion that Defendant Reynoso's failure to rewrap his splint resulted in his finger being permanently disfigured (*id.*, UF No. 83).

### 5. Analysis

When resolving a claim under the Eighth Amendment against an individual defendant, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988)

8

*citing with approval Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.")

The pivotal facts presented show that it was not within Defendant's duties or authority to rewrap Plaintiff's splint without a Physician's Order to do so. Defendant's evidence shows that on July 30, 2010, she told Plaintiff to fill out a Health Care Services Request Form to obtain a new splint wrapping, that she was not aware of any excessive risk to Plaintiff's health or safety as a result of failing to rewrap Plaintiff's splint that day or any other. Defendant's evidence also shows that on August 10, 2010, Plaintiff went to the medical clinic and requested that Defendant Reynoso rewrap his splint and that though he does not remember whether Defendant looked in a binder for any orders, it was her habit to do so whenever an inmate requested medical treatment. Likewise, though Plaintiff does not remember if Defendant Reynoso told him to fill out a Health Care Services Request Form it was her habit to do so whenever she was not able to provide an inmate with requested medical treatment and that Plaintiff did so. Plaintiff does not know whether he had any written orders for his splint to be rewrapped on July 30, 2010 and/or August 10, 2010 and/or whether any such orders were in his medical file and he has no evidence that Defendant Reynoso was aware of any such order and failed to act in accordance therewith.

Between August 11, 2010 and September 23, 2010, Defendant Reynoso rewrapped Plaintiff's splint on August 27th, August 31st, September 2nd, September 3rd, September 6th, September 9th, September 13th, September 14th, and September 16th.

As to the claim related to September 24th or 27th, Defendant presents evidence that she was on vacation and did not work on September 24th. Despite this, a medical professional rewrapped Plaintiff's splint on September 23rd, September 25th, September 26th, and September 27th. If Physician Orders existed, rewrapping the splint was all that Defendant would have been able to do for Plaintiff on the 24th or the 27th, but Defendant did not work on the 24th and Plaintiff's splint was rewrapped on the 27th.

9

Moreover, Plaintiff claims that his serious medical need on each of these dates was to have his dislocated finger reset, but he does not claim that Defendant Reynoso should have been the one to reset his finger. (Doc. 42-2, UF Nos. 59-67.)

The Court finds that, as to Plaintiff's claim that Defendant was deliberately indifferent to his serious medical needs on July 30, 2010, August 10, 2010, and September 24, 2010 or September 27, 2010, Defendant has met her initial burden of identifying admissible evidence to demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish a genuine issue as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank*, 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

### B. <u>Plaintiff's Opposition</u>

Plaintiff argues that he "made contact with Defendant" on an unspecified day and that she proceeded to look into a binder in the medical office clinic" and then told him "that his prescribed treatment order had only been authorized for 3 days, therefore was expired." (Doc. 44, pp. 2-3.) Plaintiff then argues that none of the orders were prescribed only for three days and cites to four pages of evidence. (*Id.*, citing Exh. 1, pp. 8, 15, 17, 18.) However, Plaintiff's cited exhibits only address the incident that occurred on either September 24th (when Defendant was out of town) or September 27th (when Plaintiff's splint was rewrapped by other medical staff) -- two of these exhibits are primary care progress notes dated August 27, 2010 (*id*, Exh. 1, p. 8) and October 15, 2010 (*id*, Exh. 1, p. 15) and the other two are treatment orders for August 27, 2010 through September 27, 2010 (*id*, Exh. 1, p. 17) and for September 20, 2010 through November 20, 2010 (*id*, Exh. 1, p. 18) -- none of which show that Defendant failed to rewrap his splint on any of the dates in question in this action when an order to do so existed.

Plaintiff also argues that Defendant belittled his complaints. (*Id.*, at 6:1-8.) However,

1  mere verbal harassment or abuse, even that which includes the use of racial epithets, does not
2  violate the Constitution and, thus, does not provide basis for relief under 42 U.S.C. § 1983.
3  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).  Thus, any belittling comments
4  Defendant may have made to Plaintiff are not actionable.

5        Plaintiff also asserts that on September 30, 2010, Plaintiff denied him "treatment" . . .
6  "after having looked in a binder that [his] prescribed treatment was only authorized for 3 days."
7  (Doc. 44, 6:9-15.)  Plaintiff then argues that there was no order for only three days of treatment
8  between August 27, 2010 and November 20, 2010.  (*Id.*, at 6:16-23.)  However, Plaintiff did not
9  identify September 30, 2010 as a date of his claims against Defendant in the operative pleading.
10 (*See* Docs. 9, 17.)  Though Plaintiff argues that he identified September 30, 2010 as a date of
11 incident in his discovery responses, the only dates close to that which the Court is able to find
12 among his exhibits are the dates that he submitted CDCR 7362 forms for medical treatment.
13 These include July 30, 2010 related to the incident that occurred that same date, August 10, 2010
14 related to the incident that occurred on that date, and September 30, 2010, which Plaintiff
15 specified was for the incident that occurred on either September 24, 2010 or September 27, 2010.
16 (*See* Doc. 44, pp. 49-51.)  Plaintiff only generally referenced his Exhibits 1 and 2, and did not
17 specify page numbers.  If Plaintiff intended other of his 67 pages of exhibits to support this
18 argument, he was obligated to specify them.

19       Plaintiff also asserts that he "didn't remember" that his splint was taken from him after
20 September 27, 2010 or September 30, 2010 "before or during his depo" and asserts that this is
21 also an incident that forms the basis of his claims against Defendant. (*Id.*, p. 7.)  However,
22 Plaintiff may not now expand the scope of this litigation via deposition testimony or his
23 opposition to Defendants' motion for summary judgment.  *See Gilmore v. Gates, McDonald &*
24 *Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  Further, Plaintiff admits, and his exhibits support,
25 that the order for his treatment expired on September 30, 2010.  (*Id,* at pp. 7, 49-51.)  Plaintiff
26 does not argue that Defendant could or should have written an order continuing his treatment.  To
27 the contrary, Defendant's evidence shows that she could only follow existing Physician's Orders;
28 she could not proceed on expired orders or write orders herself.  Thus, neither Plaintiff's

arguments nor evidence establish the existence of a genuine issue as to any material fact. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### IV. Conclusions and Recommendations

As set forth herein, this Court finds that Defendant has met her burden of establishing an absence of genuine material fact. Thus, her motion for summary judgment should be granted.

Accordingly, the Court **RECOMMENDS**:

(1)   the Motion for Summary Judgment (Doc. 42), should be **GRANTED**; and

(2)   that the Clerk of the Court be directed to enter judgment against Plaintiff and for Defendant Reynoso, and that this action be closed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 5, 2016**                     /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE